UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAY L. WYANT,

    Plaintiff,

v.

CITY OF LYNNWOOD, et al.,

    Defendants.

CASE NO. C08-283RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' summary judgment motion. Dkt. # 43. No party requested oral argument. For the reasons stated below, the court GRANTS the motion. The court also GRANTS Plaintiff's counsel's motion to withdraw (Dkt. # 75), subject to the conditions stated in this order.

## II. BACKGROUND

Plaintiff Clay Wyant came to Lynnwood Municipal Court on December 20, 2004 to be arraigned on a charge of driving while intoxicated. As he awaited his appearance before the court, he sat in pews open to the public. Bernard Federmayer, who was working in the courtroom as a security officer, placed a purse belonging to an interpreter working in the courtroom on a pew behind Mr. Wyant. After that, he saw Mr. Wyant repeatedly turning around to examine the purse. He then took the purse and began to look inside it. Mr. Wyant does not dispute that he placed the purse in his lap, used his hand to rummage through it, and examined a day planner he found in the purse. Baker Decl., Ex. C (Wyant Depo. at 42-43). Within 20 seconds or so, Officer Federmayer

ORDER – 1

confronted Mr. Wyant, grabbed his arm, and asked him to stand. *Id.* (Wyant Depo. at 44). Officer Federmayer took the purse from Mr. Wyant, and summoned Lynnwood Police Officer Steven Johnson to the courtroom. He relayed what he had seen to Officer Johnson, and Officer Johnson made the decision to arrest Mr. Wyant. The officers also conferred with the interpreter, who examined the purse and found nothing missing. According to Mr. Wyant, Officer Johnson (perhaps with Officer Federmayer's help) grabbed Mr. Wyant from the pew, took him to the floor, and dragged him to the entrance to the courtroom, where he was placed into handcuffs. *Id.* (Wyant Depo. at 46-56).

Although the court relies on Mr. Wyant's account of events, the court notes that Officer Johnson contends that when he approached Mr. Wyant, he asked him to come with him voluntarily. Baker Decl., Ex. A. Only when Mr. Wyant refused did he grab Mr. Wyant by the arm. *Id.* Once he had forced Mr. Wyant to stand, Mr. Wyant struggled with him. Only then did Officer Johnson forcibly take Mr. Wyant to the ground.

Whatever physical confrontation occurred between the officers and Mr. Wyant, Mr. Wyant's injuries, if any, were minimal. Mr. Wyant admits that he did not so much as suffer a bruise or scratch during the confrontation, and further admits that the officers' handling of him was not painful. Baker Decl., Ex. C (Wyant Depo. at 62).

There is no evidence that Mr. Wyant ever offered the officers an explanation for taking the purse. As it turns out, there may have been an innocent explanation. Mr. Wyant suffers from schizophrenia, *id.* (Wyant Depo. at 28-29), and also has a "problem with identity" and with "memory loss," *id.* (Wyant Depo. at 37). For these reasons, Mr. Wyant felt that the purse was an "entrapment purse" that might contain his identification, and might even be his own purse. *Id.* (Wyant Depo. at 37-38). Mr. Wyant did not explain these misimpressions to the arresting officers. The court notes that Mr. Wyant's psychological condition has repeatedly been an issue in this case. The court stayed proceedings based on his counsel's representations that state courts adjudicating unrelated criminal charges against Mr. Wyant had either found him incompetent or had

ORDER – 2

committed him to Western State Hospital for competency evaluations. *See* Dkt. # 32 (Nov. 5, 2008 order entering stay pending competency evaluation), ## 39, 41-42 (Jan. and Feb. 2009 orders and reports regarding competency finding), # 66 (Sept. 17, 2009 order vacating all deadlines due to new incompetency concerns, and cautioning counsel regarding his failure to discuss how those competency concerns affected Mr. Wyant's ability to prosecute this case), # 77 (Dec. 2009 update from counsel suggesting Mr. Wyant will be found incompetent to stand trial on two criminal charges).

Mr. Wyant was charged with third degree theft and obstructing a police officer. A jury acquitted him of theft, but convicted him of obstruction. Mr. Wyant appealed the obstruction conviction. The state dismissed the appeal and the remaining charge against Mr. Wyant after the audio recording of the trial was lost.

Mr. Wyant asserts four 42 U.S.C. § 1983 claims and two state law claims. His § 1983 claims are that the officers falsely arrested him and used excessive force and that the City of Lynnwood is liable for maliciously prosecuting him and is also liable as a municipality. His state law claims are for negligence and malicious prosecution. Defendants seek summary judgment on all claims.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must first show the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), shifting the burden to the opposing party to show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

ORDER – 3

## A. Mr. Wyant's § 1983 Claims

Section 1983 provides a damages action to a plaintiff subjected to a deprivation of constitutional rights by a defendant acting under color of law. Individuals accused of violating the statute may invoke the defense of qualified immunity, which provides a complete defense to a § 1983 violation where the legal right that the defendant violated was not "clearly established." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies where the scope of the federal right the plaintiff invokes was not "clearly established," or when the defendant's "mistake as to what the law requires" is reasonable. *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). A court examining a § 1983 claim and a qualified immunity defense thus confronts two issues: whether defendant violated a constitutional right, and whether that right was clearly established. *Pearson*, 129 S.Ct. at 815-16. The court has discretion to choose which of these issues to analyze first, and may decline to address the remaining issue if the first is dispositive. *Id.* at 818.

### 1. False Arrest

An officer may arrest someone without running afoul of the Fourth Amendment provided he has probable cause. Probable cause to arrest is "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). Probable cause exists where "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Lopez*, 482 F.3d. at 1072 (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). A fair probability is less than "conclusive evidence of guilt," but more than a "strong reason to suspect" that an offense has been committed. *Harper*, 533 F.3d at 1022.

ORDER – 4

In this case, the undisputed facts show that Officer Johnson had probable cause to arrest Mr. Wyant for theft. In Washington, theft is "wrongfully obtain[ing] or exert[ing] unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). A reasonable officer would have had no reason to believe that the purse belonged to Mr. Wyant, in part because it was on a bench behind him, in part because men rarely carry purses, and in part because at no point did his conduct suggest that he had a lawful reason to take the purse. Once Mr. Wyant took the purse and began looking through it, he was from all appearances attempting to steal it. Officer Johnson did not personally observe his conduct, but was entitled to rely on Officer Federmayer's account of events. Before Officer Federmayer took the purse from him, Mr. Wyant's conduct provided ample objective evidence of intent to deprive the purse's owner of property. Moreover, at no time after Officer Federmayer intervened did Mr. Wyant offer an explanation for his conduct to either of the officers in the courtroom. *See Lopez*, 482 F.3d at 1078 (noting that a suspect's failure to offer a "plausible, innocent explanation" for his conduct is relevant in assessing specific intent). As it turns out, Mr. Wyant's psychological condition may have led him to believe that he had a reason to examine the purse and its contents. A reasonable officer observing the events in the courtroom on December 20, 2004, however, would have had no knowledge of those factors. In these circumstances, the court concludes that the undisputed facts gave probable cause to arrest.[1] Because Officer Johnson had probable cause to arrest Mr. Wyant for theft, the court need not consider whether he also had probable cause to arrest him for the crime of obstructing a police officer.

---

[1] Defendants submitted the declaration of Seattle Police Department Sergeant Thomas Ovens, who examined the arresting officers' reports and concluded that they had probable cause to arrest. The court has not relied in any way on Sgt. Ovens' declaration. Defendants make no effort to explain how the court is permitted to substitute Sgt. Ovens' judgment for the court's judgment as to probable cause. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (finding that district court abused discretion by refusing to exclude officers' opinion testimony as to probable cause).

ORDER – 5

## 2. Excessive Force

The Fourth Amendment permits an arresting officer to use "some degree of physical coercion or threat thereof" to gain custody over an arrestee. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Because the Fourth Amendment requires only objectively reasonable conduct, the constitutional inquiry in an excessive force claim is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (internal quotation omitted). The court must balance the nature and extent of the intrusion on the person with the governmental interests at stake. *Id.* at 395. In an excessive force claim, the court balances the quantum of force used against the need to use that quantum of force. *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). In considering an officer's need to use a particular level of force, the court should consider several factors:

> [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.

*Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (quoting *Graham*, 490 U.S. at 396). The court may also consider "the availability of alternative methods of capturing or subduing a suspect." *Id.* (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)). In considering these factors, the court may not rely on hindsight, and instead must judge the officer's conduct from the "perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. In doing so, the court must consider that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

The court begins by noting that the undisputed facts establish that the officers used a very low level of force in arresting Mr. Wyant. Mr. Wyant admits that he suffered no physical injury, and admits that the force did not cause him pain.

ORDER – 6

It is less clear, however, what quantum of force was necessary. In Mr. Wyant's account of events, which the court is required to credit in resolving a summary judgment motion, the officers' use of force came quickly, giving rise to questions about whether he might have voluntarily left the courtroom given more time. The crime Mr. Wyant was accused of was not violent and not particularly serious, and there is no indication that he posed a threat to the safety of the officers or others in the courtroom. Finally, although the court will resolve this motion by relying on Mr. Wyant's implied assertion that the officers used force against him without giving him a chance to voluntarily submit to an arrest, the court observes that Mr. Wyant has offered no specific evidence to counter Officer Johnson's statement that he stiffened his arm and refused to comply with his commands, which courts have held is tantamount to an admission of resistance. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).

The court concludes that the low quantum of force the officers applied was not unreasonable, regardless of whether they needed to use any force. The court is aware of no binding authority suggesting that an officer is ever prohibited from using painless, non-injuring force in arresting a suspect.[2] Were that the case, an officer might well be required, for example, to ask a suspect if he would place himself in handcuffs rather than permit the officer to do it. Moreover, even if the Fourth Amendment required a lesser quantum of force in this case (which is to say no force at all), the court finds that a reasonable officer would not have been on notice that that this is what the law required. There is no clearly established right to be free from pain-free, non-injuring force used to

---

[2] One Ninth Circuit panel has stated that "where there is no need for force, any force used is constitutionally unreasonable." *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000). Given that the challenged use of force in *Headwaters* came after law enforcement had already used force to subdue the plaintiffs, the opinion cannot be read to suggest that the use of minimal force is impermissible in gaining custody over an arrestee. Moreover, the Supreme Court vacated the *Headwaters* opinion. *Humboldt County v. Headwaters Forest Defense*, 534 U.S. 801 (2001). The only published Ninth Circuit opinion to repeat the "no need for force" statement from *Headwaters* did so before the Supreme Court vacated the opinion. *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001). Other circuits have held that de minimis force used in an arrest does not violate the Fourth Amendment. *E.g.*, *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

ORDER – 7

effect an arrest. *See supra* n.2. Accordingly, even if the officers used excessive force, qualified immunity provides them a complete defense.

### 3. Malicious Prosecution

Officers Federmayer and Johnson are protected from § 1983 claims for malicious prosecution by the presumption that the prosecutor who pursued charges against Mr. Wyant exercised independent judgment. *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). In order to survive summary judgment, Mr. Wyant bears the burden of producing evidence from which a jury could conclude that the prosecutor did not exercise independent judgment. Mr. Wyant, however, offers no evidence on this issue whatsoever.[3] He does not so much as identify a prosecutor who pursued charges, much less present any reason to believe that the prosecutor did not exercise independent judgment.

### 4. Municipal Liability

The only Defendant other than Officers Federmayer and Johnson is the City of Lynnwood. Although Mr. Wyant contends that the City is also liable for each of the § 1983 claims discussed above, he scarcely explains why. A municipality violates § 1983 only when it adopts a policy, or longstanding custom equivalent to a policy, that results in a constitutional injury. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *see also Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). A plaintiff can make this showing in one of three ways: by pointing to a policy or custom that injured her, by pointing to an injury caused by an action taken in the official capacity of a policymaker, or by showing that a policymaker ratified a subordinate's unconstitutional act. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).

---

[3] Mr. Wyant's sole evidence related to his prosecution is five pages selected from the Lynnwood Municipal Court docket. These pages establish nothing more than the undisputed fact that Mr. Wyant was tried on two charges, convicted on an obstruction charge, and that even that charge was ultimately dismissed. He offers no argument that would explain how this evidence bears on the prosecutor's independent judgment.

ORDER – 8

In this case, Mr. Wyant's municipal liability claims are doomed because he has failed to show a constitutional violation by either of the individual defendants. He therefore cannot show a "direct causal link" between any City policy and a constitutional violation. Putting aside, however, that he has not shown a constitutional violation, he has also not offered any evidence of a policy or custom. Instead, he argues that "the City, through its prosecutors" prosecuted him without probable cause and [thereby] ratified the acts of the individual officers. Wyant Opp'n (Dkt. # 19) at 19. There is no evidence, however, that any prosecutor involved in Mr. Wyant's case was a decisionmaker, had the power to set policy, or the power to ratify any law enforcement officer's acts. Mr. Wyant cites no legal authority for the proposition that a prosecutor's decision to file charges is a ratification of the arresting officer's conduct, and the court is aware of none. For at least these reasons, Mr. Wyant fails in his efforts to hold the City of Lynnwood liable on his federal claims.

## B. Mr. Wyant's Negligence Claim

Although Mr. Wyant claims that each Defendant was negligent, he does not explain how. Defendants attempted to posit some theories under which Mr. Wyant might be claiming negligence, but even in opposition to their summary judgment motion, Mr. Wyant fails to point to a negligent act. Given the court's conclusion that Defendants' acts were constitutionally authorized, the court is at a loss to find even a potentially negligent act. Mr. Wyant's failure to explain which acts of which Defendants were negligent is fatal to his negligence claim.

## C. Mr. Wyant's State Law Malicious Prosecution Claim

To prove malicious prosecution under Washington law, a plaintiff must prove five elements: (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff,

ORDER – 9

or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution. *Clark v. Baines*, 84 P.3d 245, 248 (Wash. 2004). As to the theft charge against Mr. Wyant, the court has already determined that the arresting officers had probable cause, which is fatal to his malicious prosecution claim. As to the obstruction charge, a jury convicted Mr. Wyant. Although that charge was later dismissed because of the City's failure to preserve a record of the trial, a conviction at trial is conclusive evidence of probable cause. *Hanson v. City of Snohomish*, 852 P.2d 295, 299 (Wash. 1993) (holding that a conviction, even if reversed on appeal, establishes probable cause). Plaintiff contends that *Hanson* should not apply here because the City is to blame for losing the record of the Municipal Court trial. He cites no authority for this argument, and the court finds that *Hanson* applies in these circumstances, because there is no suggestion that the lost record undermines the jury's implied finding of probable cause. Because there was probable cause to prosecute Mr. Wyant on both charges, his state law malicious prosecution claim fails as a matter of law.

Before turning away from Defendants' summary judgment motion, the court notes that its disposition today makes it unnecessary to consider many of the arguments Defendants raised, including but not limited to their argument that the court should find that the Municipal Court's alleged probable cause finding at Mr. Wyant's arraignment has collateral estoppel effect, that the court should decline to exercise supplemental jurisdiction over Mr. Wyant's state law claims, and that Mr. Wyant failed to submit a proper pre-suit claim to the City of Lynnwood as a prerequisite to his state law claims.

**D.     Mr. Wyant's Counsel's Motion to Withdraw**

Finally, the court turns to Mr. Wyant's counsel's motion to withdraw from representing him. According to the motion, Mr. Wyant has requested that counsel withdraw. Ordinarily, this would be a sufficient basis to permit withdrawal. In this case, counsel's attempt to withdraw raises serious concerns. Questions about Mr. Wyant's mental capacity have repeatedly delayed resolution of this action. Twice, state courts

ORDER – 10

adjudicating unrelated charges against Mr. Wyant have committed him to Western State Hospital to determine whether he is competent to stand trial. The court has stayed this action and vacated case deadlines based on concerns that Mr. Wyant is not competent to assist in the prosecution of this case. Indeed, the court has reached the merits of this summary judgment motion only because his counsel has represented that he opposed it during a period in which Mr. Wyant was competent.

The court has recently received letters (Dkt. # 70) from Mr. Wyant that both confirm that he has requested that his counsel withdraw and confirm that there are serious questions about his capacity to act as his own attorney. Although counsel repeatedly used concerns about Mr. Wyant's mental capacity in delaying the resolution of this action, he has not addressed whether Mr. Wyant is now capable of protecting his legal interests without counsel. Considering these circumstances, the court has serious concerns over whether counsel's withdrawal will prejudice Mr. Wyant.

Ultimately, the court grants counsel's motion to withdraw solely because the disposition of Defendants' summary judgment motion means that even if Mr. Wyant is not competent to protect his legal interests, that will not affect the disposition of this matter on merits. Mr. Wyant's competency does, however, affect a possible appeal. The court therefore places the following conditions on counsel's withdrawal. Counsel must deliver a copy of this order and the court's judgment to Mr. Wyant, and explain that these documents terminate his claims at the trial level. Counsel must also advise Mr. Wyant about his appellate rights. Counsel must then file a declaration certifying that he has taken these steps. If Mr. Wyant continues to pursue his claims, the court believes that this order and the docket in this case are sufficient to give notice to an appellate court that Mr. Wyant's may need the assistance of a guardian ad litem or another person who can protect his legal interests.

ORDER – 11

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' summary judgment motion (Dkt. # 43) and directs the clerk to enter judgment for Defendants. The court GRANTS Plaintiff's counsel's motion to withdraw (Dkt. # 75), subject to the conditions stated above. The court directs the clerk to update the docket to reflect the service address for Mr. Wyant that his counsel provided at Dkt. # 78.

DATED this 11th day of January, 2010.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12